PITMAN-, J.
| plaintiffs, Charles A. Taylor, Joel Taylor and Justin Taylor (“Landowners”), sought a declaration that the mineral servitude burdening their land expired by operation of a ten-year fixed term found in their deeds. Defendants, Elicia L. Morris, Reginald D. Morris, David D. Williams, Robert Williams, Barbara F. Williams Greenway, Artie D. Williams, Rebecca F. Stephens, Elizabeth Freeman Roblow, Yerisa B. Ross Freeman Williams, Rosemary Hamilton Hinman, Sandra J. Hamilton, Sherri Hamilton Worman, Steven Hamilton, Jerry W. Hamilton, Roger Hamilton, Patricia Hamilton, Larry E. Hamilton, Juanita Hamilton Mawhorter, Edwin Binning, Rosemary Binning McGee, Bobby Binning and Sharon K. Ahlfors Fimpel (“Servitude Owners”), sought a declaration that the servitude was governed by the rules of prescription and that prescription had been interrupted by good-faith drilling operations within the ten-year period of the servitude’s creation. The Landowners had also sued the current mineral lessee, Coastal Land Services, Inc. (“Coastal”), in a separate action, seeking a declaration that the mineral leases granted by the Servitude Owners had been terminated as of January 2009. The suit against Coastal was consolidated in the lower court with the suit between the Landowners and the Servitude Owners. Cross motions for summary judgment were filed by all parties. The trial court granted the Servitude Owners’ and Coastal’s motions for summary judgment and denied the Landowners’ motion for summary judgment. The Landowners appeal that judgment. For the reasons set forth herein, we affirm.

12.FACTS

In January 1999, Taylor Properties, Inc., purchased a 120-acre tract of land in De- *954 Soto Parish in five separate transactions from the Servitude Owners. Each deed contained a reservation of a mineral servitude in the following language:
Vendor hereby reserves all oil, gas and/or mineral rights above and/or below the ground for a period of ten (10) years from the date of this Cash Sale Deed.
On May 2, 2008, Taylor Properties, Inc., transferred ownership of the 120-acre tract to the Landowners in the following amounts: Charles Taylor, 2/5 interest in 48 acres, more or less; Joel Taylor, 1/5 interest in 24 acres, more or less; and Justin Taylor, 2/5 interest in 48 acres, more or less. Drilling operations began on a unit well on October 21, 2008, within ten years of the original sale of the property to Taylor Properties, Inc. The current mineral lessee, Coastal, has produced an affidavit of David E. Carpenter, an employee of Shell Exploration and Production Company, which drilled the well for the operator. Mr. Carpenter’s affidavit stated that the well was “spud” on October 21, 2008, went into production into the pipeline on September 24, 2009, and has produced since that date to the date of the affidavit with only a brief lapse from April 5, 2010, through May 15, 2010, when it was shut in for maintenance operations.
In August 2009, the Landowners filed a petition for declaratory judgment, damages and attorney fees and claimed that the acts of sale by which the property was transferred to their ancestor in title contained term mineral reservations which expired in January 2009. They claimed to be thejjowners of the entire surface and minerals in the tract and sought a declaratory judgment recognizing their ownership. The Landowners claimed they have been damaged by the failure of the Servitude Owners to furnish recordable acts evidencing the extinction or expiration of the term mineral servitudes. The Landowners prayed for a judgment declaring the mineral servitudes to have expired in January 2009 and that such mineral servitudes were of no further force or effect, for damages and for attorney fees.
Cross motions for summary judgment were filed with the Landowners asserting that the mineral reservation created a fixed, ten-year term, and the Servitude Owners and Coastal (in separate motions) asserting that the customary ten-year prescriptive period was implied and was subject to intérruption by the good-faith use of the servitude.
The Landowners submitted the affidavit of James Taylor, as well as his deposition, in support of their motipn for summary judgment. Mr, Taylor stated that he was the person who negotiated with the vendors of the land and that:
In my negotiations with the Vendor on the sale of the Property which was accomplished by the deeds.... it was agreed by the parties that the mineral reservation would be for 10 years and 10 years only which is reflected in those deeds.
In Mr. Taylor’s deposition, he testified that an attorney had no role in the negotiations and that he was the person who negotiated for the vendees. He also stated that Ms. Sara Morris did all the negotiating for the vendors. He never spoke to any of the other vendors regarding the terms of the sales. When questioned about his understanding of mineral servi-tudes in 1 .(Louisiana at the time of the negotiations, he stated, “We just talked. I mean ... there wasn’t no big understanding of anything.” When asked if he had any understanding of what an interruption of prescription meant in Louisiana at the time of the acts of sale, he responded, “Interruption of prescription? No, tell *955 me.” He discussed the negotiations between them and stated:
[s]he called me and said that she had ... decided to sell the property ... and that she wanted to make a Louisiana reservation and we talked [sic] I told her, I said, you know, I knew I had offered her way more money than— there was two bids on the property ... and I knew I had offered way more than the other bids. And ... we just kept hitting back and forth on the — on the reservation and so forth and it ended up — the last thing she said was will you let me keep the minerals for 10 years? And I said yes and I’d get Herman to write it up that way. And Herman is the lawyer I approached to write the deeds up.[1]
Mr. Taylor testified that he approached the attorney to draw up the deeds and told him the vendors wished to reserve the minerals for ten years and ten years only. The attorney originally prepared the deeds without any mineral reservations. When Ms. Morris refused to sign the deed to her property, Mr. Taylor instructed the attorney to revise the deeds to include the mineral reservation. The vendors all signed the revised deeds.
The Servitude Owners supported their own motion for summary judgment and claimed the deed prepared by Taylor Properties, Inc., did not include any provision relative to interruption or suspension of the mineral servitude by use. Without the specific agreement and language in a document varying the provisions of law applying to mineral servitudes, the |Bstatutory scheme of term, interruption and suspension of prescription of nonuse applies. They further argued that there had been use of the servitude by virtue of drilling operations on the land. Thus, prescription of nonuse had been interrupted.
In support of their motion for summary judgment, the Servitude Owners produced the affidavit of Elizabeth Freeman Rob-low, which stated that she received a letter with the first proposed deed, which she recalls was from Mr. Lawson, and that she later received for execution a second deed revised to include the mineral reservation. She signed the second (revised) deed. She avered that she did not participate in any manner in the preparation of the deeds and that “At no time did anyone mention to me or elaborate that the mineral reservation had a limited life or that it could not be interrupted by drilling.” Her affidavit states that she is one of the three surviving persons who actually signed the deeds which created the mineral servitudes that are the subject of this lawsuit. Her mother, Bernice Freeman Williams, and her sister, Rebecca Katherine Freeman Stephens, are also alive. Ms. Morris and Ms. Binning have passed away since the execution of the deeds.
Ms. Roblow’s sister, Rebecca Katherine Freeman Stephens, also provided her affidavit which reiterates that she was aware that the deed contained a reservation of minerals; however, nothing in the communications mailed to her indicated anything unusual about that reservation. Ms. Stephens states, “At no time did anyone mention or |,¡elaborate that the mineral reservation had a limited life or that it could not be interrupted by drilling or other operations.”
Coastal produced other affidavits by various landmen and representatives of oil companies who had knowledge of the drilling and production on the property. These were filed in support of Coastal’s motion for summary judgment and indi *956 cate that a compulsory unit was created on the property by order dated June 18, 2008. Attached to the affidavits were copies of well history indicating that drilling activity began October 21, 2008. The affidavit of the employee of Shell Exploration and Production Company stated the well first flowed to a production facility on September 24, 2009, and has been in production almost continuously since then.
The trial court considered all of the motions and concluded that, pursuant to the law found in the Mineral Code, specifically, La. R.S. 31:74, and the case of St. Mary Operating Co. v. Champagne, 06-984 (La.App.3d Cir.12/6/06), 945 So.2d 846, mit denied, 07-0301 (La.4/5/07), 954 So.2d 140, the phrase “for a period of ten years” was a restatement of the default prescriptive period assumed into all mineral rights created in the State of Louisiana because the parties did not specifically state otherwise. Since there was no such affirmative statement in the deeds specifying that the mineral servitude created for a period of ten years would not be subject to prescription, it was deemed to be subject to prescription. The trial court found that prescription was interrupted by good-faith drilling operations within ten years. For those reasons, the motions of the Servitude Owners |7and Coastal were granted, and the Landowners’ cross motion was denied. The Landowners now appeal.

DISCUSSION

The salient issue presented here is whether the mineral reservation created a fixed, ten-year term, or whether the parties simply restated the customary ten-year prescriptive period, making it subject to interruption by virtue of good-faith drilling operations within the ten years of the servitude’s creation.
The Landowners argue that the trial court erred in finding that the language in the deed created a perpetual servitude limited only by the prescription of ten years’ nonuse. They also argue that the trial court committed error when it found that the prescriptive period of nonuse is “assumed” into all mineral reservations, even those of a duration or fixed term of ten years or less. The Landowners further assert that the trial court committed error when it found the language reserving the mineral servitude to be ambiguous, thus requiring interpretation of those words beyond their clear meaning. They contend that the words of the reservation clearly imply a starting date and a date on which the servitude would end, thereby creating a specified term for the servitude. They also argue that the trial court committed error by applying the comments in the Mineral Code, specifically those to La. R.S. 31:74, instead of applying precepts found in the Louisiana Civil Code.
The Servitude Owners and Coastal argue that the trial court correctly held that the language in the deeds created a mineral servitude only and that, ^although limitation of terms of servitudes and limitations of prescriptive periods are sanctioned by La. R.S. 31:74, the intent to renounce the prescriptive regime must be clear and unequivocal. They further argue that, although the language reserving the mineral servitudes clearly stated that the servi-tudes ran from the date of each deed for a period of ten years and would be in effect until January 2009, nothing was said about whether the prescription of nonuse would, or could, be interrupted by the use of the servitudes.
In considering the trial court’s rulings on a summary judgment motion, we apply a de novo standard of review. Summary judgment should be granted where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there *957 is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 12-2055 (La.3/19/13), 112 So.3d 187; Nitro Energy, L.L.C. v. Nelson Energy, Inc., 45,201 (La.App.2d Cir.4/14/10), 34 So.3d 524.
The Mineral Code is found in Title 31 of the Louisiana Revised Statutes. The basic mineral rights that can be created by a landowner are the mineral servitude, the mineral royalty and the lease. Mineral rights are real rights and are subject either to the prescription of nonuse for ten years or to special rules of law governing the term of their existence. La. R.S. 31:16. A mineral servitude can be extinguished by prescription resulting from nonuse for ten years or an expiration of time for which the servitude was | ^granted or the happening of the dissolving condition attached to the servitude. La. R.S. 31:27.
Pursuant to La. R.S. 31:3, unless expressly or impliedly prohibited from doing so, individuals may renounce or modify what is established in their favor by the provisions of the Mineral Code if the renunciation or modification does not affect the rights of others and is not contrary to the public good. In fact, La. R.S. 31:72 provides that parties to an act creating a mineral servitude may alter the applicable legal rules, subject to certain limitations in the Mineral Code. One of those limitations is found In La. R.S. 31:74, which states as follows:
Parties may either fix the term of a mineral servitude or shorten the applicable period of prescription of nonuse or both. If a period of prescription greater than ten years is stipulated, the period is reduced to ten years.[2]
|inIn St. Mary Operating Co. v. Champagne, supra, the vendors of a parcel of land sold the property pursuant to a cash sale deed which included the following clause:
*958 Vendors reserve unto themselves all of the minerals underlying or which may be produced from the above described tracts for a period of ten years, this being a reservation of royalties, executive rights, bonuses, delay rentals, and all other mineral rights whatsoever.
A dispute arose as to the ownership of the minerals produced from a well on the subject property, and the operating company invoked a concursus proceeding. The current owners of the land filed a motion for summary judgment claiming the language in the cash sale deed created a ten-year fixed term mineral servitude as opposed to a mineral servitude subject to the rules of prescription. The servitude owners filed their own motion for summary judgment. The trial court granted the summary judgment filed by the current landowners and denied the servitude owners’ motion, finding the deed created a ten-year fixed term mineral servitude, which was not subject to the rules of prescription. The servitude owners appealed.
The third circuit reversed and found that the reservation of a mineral servitude for a period of ten years merely restated the default prescriptive period assumed in all mineral rights created in the state. Thus, this particular mineral servitude had not prescribed. It further found that the deed failed to specify that the ten-year period was the term of the servitude rather than the prescriptive period. La. R.S. 31:3, 31:16 and 31:27.
InThe Champagne, supra, court stated that the cash sale deed did not mention prescription at all, nor did it state in clear terms that the ten-year period would be a term not subject to continuation by the interruption of prescription. The court noted that the comments to La. R.S. 31:74 explained that, if a party wanted to create a term and deny the benefit of the interruption of prescription, that intention had to be specified. The court found that the phrase “for a period of ten years” was a restatement of the default prescriptive period assumed into all mineral rights created in the State of Louisiana because the parties did not specifically state otherwise. Because there had been drilling within the ten-year period after the deed was signed, the mineral servitude was deemed to continue to exist until there was a ten-year lapse in the use of the servitude.
The factual situation of the Champagne, supra; case is identical to that of the case at bar. After a de novo review of the record, we find that the language in the deeds by which the mineral servitudes were created said nothing about a limitation of the ten-year prescriptive period imposed by law. We note that Mr. Taylor’s affidavit indicates that he intended the servitude to be “for 10 years and 10 years only,” but the language of the deed does not include the word “only.” Further, the countervailing affidavits filed by the Servitude Owners state that they were unaware of any limitation on their mineral servitudes. In the interpretation of a contract, when there is a doubt which cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished the text. La. C.C. art. 2056. In this case, the Landowners supplied the contracts | ^containing the mineral reservation. Since La. R.S. 31:74 provides that parties may either fix the term of a mineral servitude or shorten the applicable period of prescription of nonuse or both, and the language of the deed creating the mineral servitudes at issue in this case was silent regarding the pertinent prescriptive period and whether it was subject to interruption, we find that the ten-year prescriptive period implied by law was interrupted by the production of minerals within the ten years following the creation of the servitude. We, therefore, *959 find the Landowners’ assignments of error to be without merit.

CONCLUSION

Based on the foregoing, the judgment of the trial court granting the motions for summary judgment filed by Elida L. Morris, Reginald D. Morris, David D. Williams, Robert Williams, Barbara F. Williams Greenway, Artie D. Williams, Rebecca F. Stephens, Elizabeth Freeman Roblow, Verisa B. Ross Freeman Williams, Rosemary Hamilton Hinman, Sandra J. Hamilton, Sherri Hamilton Worman, Steven Hamilton, Jerry W. Hamilton, Roger Hamilton, Patricia Hamilton, Larry E. Hamilton, Juanita Hamilton Mawhorter, Edwin Binning, Rosemary Binning McGee, Bobby Binning, Sharon K. Ahlfors Fimpel and Coastal Land Services, Inc., and denying the motion for summary judgment filed by Charles A. Taylor, Joel Taylor, and Justin Taylor, is affirmed. Costs of appeal are assessed to Charles A. Taylor, Joel Taylor and Justin Taylor.
AFFIRMED.
CARAWAY, J., concurs with written reasons.

. The deeds were prepared by Mr. Herman Lawson, an attorney in Mansfield, Louisiana.

. The comments to La. R.S. 31:74 state in pertinent part as follows:
Consideration was given to the matter of establishing rules of construction to aid the courts in determining whether parties intend to fix the duration of a mineral servitude or to subject it to a prescriptive period other than that which would be imposed if the parties were silent. However, it was determined merely to state some guidelines for construction in this comment. In the event of silence as to the term of a mineral servitude, the right created is permanent or perpetual, but it is subject to loss by accrual of the prescription of nonuse. Parties to an agreement which does not specify a fixed term or a prescriptive period other than the legal one are, of course, free to limit the duration of the rights created or to alter the prescriptive period by subsequent agreement, subject to the same limitations applicable to the original instrument.
[[Image here]]
It is more difficult to construe instruments specifying a period less than ten years. Unless the creation of a mineral servitude is a part of a security transaction, it is rare that a party will, in the ordinary situation, contract for the creation in his favor of an interest with a fixed term less than ten years. Thus, it is suggested that in the absence of some expression to the contrary in the instrument in question, the specification of a period less than ten years for a mineral servitude should be construed as an agreement on a prescriptive period less than ten years, and the interest should be considered subject to the rules of use and thus renewable by exercise of the rights granted or reserved. Parties are, of course, free to specify that the stated number of years is the term of the interest and not a prescriptive period. (Emphasis added.)